Thank you, Your Honor. May it please the Court, my name is Rochelle Fortier-Wadivia, and I am here representing the Petitioner Khadijah Muhammad, who actually is present in the courtroom today. Do you have any comment on the government? Well, maybe we ought to ask the government first. The government has a motion that we remand. I'm aware of that, Your Honor. Maybe we ought to ask the government a couple of questions about its motion first. That's fine. Good morning, Your Honors. Joshua Braunstein on behalf of the Attorney General. I would begin by apologizing for the lateness of the motion to remand. We apologize for the motion. As I prepared for a larger case, I realized that it was important for the Board to have an opportunity to ensure that its decision in the case accurately reflected and constituted the intended statement of the agency. There were two decisions already. The first time the government issued a decision, it was incomprehensible. It got the pages mixed up. You couldn't tell what it was doing. So it then had another chance, and it said, we've made a mistake, now here's our decision, and explained its reasons. Now, you want a third chance to explain your reasons? I believe that's ‑‑ I believe it's appropriate for the Board to have an opportunity to make sure that its statement is clear. There are two opportunities. And we're asking for another, Your Honor. What I couldn't understand about your motion is you suggested that what you did on remand would somehow affect our ability to review the appeal from the second decision as a motion to reconsider. As far as I can tell, the most orderly way to deal with this at this point is to say the first motion to reopen, there was a motion to reopen, then there was a motion to reconsider, which was a proper motion to reconsider because the first thing was incomprehensible, and now they said this doesn't make sense, and they explained, and you now explained yourself, and why do we have to do it again? Well, Your Honor, for one matter, the second motion, neither motion that the Petitioner filed, made any allegation of error with respect to the Board's decisions. No, but the second one made an allegation of error with regard to the first one, which was fairly ‑‑ which was merited, at least procedurally, because the first one didn't make much sense. Your Honor, I respectfully disagree. The second motion at Record 14 merely says the opposite. Unless I'm in the wrong place, but the motion ‑‑ the first motion says my client should have an opportunity to have her case reopened so that she can present the claim that she has never faced female genital mutilation. Well, that was as ‑‑ let's just say there were as many problems with their motion as with the government's papers. And that's why we believe that ‑‑ Because they did attach to it documents that showed she had had this procedure. Even though the motion said she faced the procedure, the documents said it. And then they filed more papers later. It's clear that there was an error there and that they ‑‑ what they want to do is reopen to present the evidence that she's had this procedure and make the argument that that is a ground for asylum. Yes, Your Honor. We know what she wants to do. However, she has ‑‑ I mean, and again, I didn't come here to argue the merits of the motions. But I will say this. The second motion to reopen does not allege error by the board. I do not think it can be in any ‑‑ it would be beyond a stretch. It's a far cry from being a motion to reconsider. She never raised an error. And I think that in that case, Judge Berzon, it would be a failure to exhaust administrative remedies with respect to that. The only thing the second motion says is, indeed, the first motion said, I have not been subjected to female genital mutilation. The second motion, after the board's, as you say, Judge Reinhart, unintelligible decision, I think that it is intelligible, but it is not clear. And the board explains that. But, again, that's why we're here asking to remand. But ‑‑ Would she have a hearing on this? Well, Your Honor ‑‑ What's wrong with that? If you expose her, you know, this to the light of day and she presents her evidence that she has been subjected to this procedure and argues whether it's past persecution or whatever, what's wrong with that? Well, nothing would be wrong with that, Your Honor. But her motion, and again, I didn't come to argue the merits, but the motion on its face doesn't make even a claim as to why she falls within this Court's precedence or the board's precedence to merit review. And in order to get reopening on ineffective assistance of counsel, you've got to show why you were prejudiced. Now, if we were to grant this motion, presumably it would be with the understanding that she would have the authority to appeal from your ‑‑ the BIA's decision on that motion. Yes, Your Honor, she would. And that's why we don't believe she would be ‑‑ So we would predominate the question of whether the second ‑‑ what we actually have here now, which is an appeal from the second motion to reopen, matter ‑‑ wouldn't matter anymore. No, I think that ‑‑ It would be back to the first one. Yes, Your Honor. I believe so. I believe that the board should be able to, as we said in the motion, look at the first motion. Because it's clear it was an editing error. I mean, it's clear that the board did write an opinion. Because if you look at the second page of the board's decision ‑‑ This is just somewhat disturbing. It was because it was clear when whoever wrote the brief wrote the brief as well. And I understand and I appreciate your dealing with it now. But it's a lot of extra trouble for everybody. I agree. And we apologize for the trouble to the court. But I would submit that the person who wrote the brief made a defensible argument. But we decided later, much later, unfortunately, that it was more appropriate to allow the board to say this is what we intended to say and to examine whether that changes the outcome so that ‑‑ Thereby to ‑‑ because your motion was not clear on this. And thereby to predominate any question about the propriety of the second so‑called motion to reopen or reconsider, whatever it is, because you then have an appeal from the first one. Well, Your Honor, the board would have to address in that ‑‑ in the remand whether the decision in the first motion. In other words, we are asking for it to have an opportunity to relook and see if that would affect the second motion. I think that there is ‑‑ That's what I'm not understanding. If you're going to go back over the first motion, then there has to be an appeal from whatever you now decide directly. I agree. I agree. Whatever the board decides. You were just saying that maybe they could say that somehow the failure to appeal the first one is still binding. I didn't understand what you were saying. The failure to appeal. She did appeal the first motion. Okay. She appealed. She filed a motion to reopen and petitioned for review of this court. Right. She thereafter filed a second motion, which she styled a motion to reopen, I would note, and to clear up any confusion as to whether it was intended to be a motion to reconsider. It's called a motion to reopen. And never raised any error whatsoever with respect to the board's prior denial, the, I would say, flawed decision, the damaged decision. And so, Your Honor, I think that on remand, she should have, the board would have an opportunity to say, this is what we meant to say in our first motion. Or the board could change its mind. I mean, it would be before the board in order to do what it thought best to express the agency's decision, because it is clear that the first board decision does not accurately or adequately represent the board's intended decision. It was an editing, it's clearly an editing error that the first page of that decision was. That was clearly an error. But what's wrong with the second decision? I think that the, well, I think that I felt it was proper. Again, we could make an argument that the second decision, you know, on both the first and second decision, that one could divine the board's intention or intended, but I think that it's not the clearest statement of it. And therefore, the board should have the opportunity to say, this is what we meant to say, and to go back to the first decision. So, yes, she would have an opportunity to appeal whatever it was that the board did with respect to the first and second motions. I think without being able to commit, because I don't know what the board would do exactly, I can't guarantee what the board would do, but I would venture that the board will combine, you know, its review of the record and make a decision based on everything that the petitioner submitted in the two motions. All right. Well, let's hear from counsel now. Thank you, Your Honor. Thank you, Your Honor. The first thing I'd like to point out to the Court is that what we have here, I think, is not really a motion to remand, but rather a motion for an extension of time to issue a decision. And I'd like to point out that on July 11, 2003, this attorney specifically sent a letter to the Board of Immigration Appeals and requested that they issue a complete decision. Now, that was July of 2003. We're now here in November of 2004, and the board's attorneys has now been able to issue a decision. The second motion to reopen to issue a complete decision. This was after the decision, the second decision. After the second decision. Right. July 11, 2003. And there was a letter, a specific request to reissue the decision. And in the interim, we can look at the record again and see that this issue has been raised by OIL, the Office of Immigration Litigation, in their pleadings before the Court. One moment, please. Where it asserted that there was no decision and that it was going to make every effort to get a decision from the Court. But I think above all that, as we track the details of what has happened in this case, the most important thing I think is that we should look to UBAL versus INS, UBAL-Maringo versus INS, where what we have here is an abusive discretion by the Board of Immigration Appeals for failing to provide substantive review. It has not provided a meaningful evaluation of the evidence that was presented before it in the first motion. It's quite simple. What has happened in the brief that has been argued? Well, the first motion was pretty confusing. The evidence is there, Your Honor. The evidence is there, but the brief misrepresents the evidence. I mean, the very or the motion misrepresents the evidence. And it isn't so surprising that somebody going over a motion would read the motion and say that the issue here is whether she has that the assumption here is that she has not been subjected to this procedure, and therefore there's no reason to be reading this document because I'm going to believe what they say about it. I would agree in part, Your Honor, that if you are the Board of Immigration Appeals and you're only going to rely on assertions by counsel, then perhaps they were confused. If they're only going to rely on one word that was in the reply was corrected and stated that this was a Scribner's error. This was what? Scribner's error. Scribner's error. And the Board has a responsibility to provide a meaningful review, and I think I'd just like to quote the case. What's the remedy for not providing a meaningful review? Abusive discretion and a reversal. No, no. Suppose we concluded that the Board's decision did not provide a meaningful review. What would we do? What relief would be ordered? You would reverse their decision to not reopen the case and remand it to the immigration judge based on their abusive discretion. Even if there were no merit to it? I'm sorry, Judge? If there were no merit to it? No merit. I'm sorry, I'm not understanding. No merit to the? Well, a Board doesn't provide a meaningful review. One possibility is you remand and say provide a meaningful review. Another possibility is you skip the Board's meaningful review and decide the case on the merits, right? Well, those are two things, Judge. Those are two things. I mean, why we are here? We have a third one or a version of the second one that, as I understand our law with regard to ineffective assistance claims in particular, and that's what we have here, there has to be a demonstration of some likelihood that some kind of a prejudice is showing. It's not that you would have succeeded, but that you might have succeeded. Exactly. And so in that regard, I was going to – well, that's a slightly different question. Go ahead. Yes. So what is that showing? This is correct, that there has to have been some prejudice to the respondent. However, I mean, we do – we believe that we do have prejudice here, but the courts – this court in Rodriguez-Lazarius has said that there really doesn't have to be strict compliance with Lozada whenever we're raising a case. That's not a Lozada issue. That's a merits issue. All right, Your Honor. Given that, there's two things – there are three things here. First of all, the court did not see the entire claim that the respondent had for asylum, withholding of removal, and relief under the Convention Against Torture because her attorney, who has admitted through correspondence to the bar, that she did not raise the issue of female genital persecution. This is a case of past persecution where the respondent was, in essence, subjected to torture, and that was not before the judge. The judge had no opportunity to review and look at any – either accept the testimony of the respondent or – There's also a substantial legal issue, but it hasn't been addressed, as to whether and how past persecution would work exactly in a case like this, in which there's, by definition, no possibility of future persecution because she's already had the procedure. Well, I think, Your Honor, though, in the matter of Chinliner cases – Well, but it doesn't track directly, and it would be certainly a large legal issue for the court to address – for the BIA to address about how those – how that analysis, which was based at least in part on the particular statute there, applies more generally. There it was – is that not right? Okay. Well, I think, Your Honor, the point is that respondent did not – through ineffective assistance of counsel, the respondent did not have a case – chance to have her entire case heard. Her claim for past persecution based on female genital mutilation was not before the judge at the time. Also, the judge was – she was prejudiced because the judge made an adverse credibility finding against her, whereas if she had been able to present her claim for female genital mutilation with corroborating evidence, certainly this credibility issue would not be there. Are you familiar with this case in our court, Asinor v. Ashcroft? I'm sorry, Your Honor? Are you familiar with Asinor v. Ashcroft? I don't think it was cited in the briefs. No, I'm not, Your Honor. Okay. I'm familiar with the recent case of Eber, which – I'm sorry? No, I'm not familiar with that case, Chen. Okay. It's my understanding that certainly on the board cases, NREI-Casinga, YTL, CYZ, matter of Chen, the nonrepeatable harm is certainly – there's no obligation to establish a well-founded fear of persecution. Once the past persecution claim has been established, then there is no further – there is no further evidence needed to establish a well-founded fear. And there is, as a matter of law, therefore – well, as a matter of law under withholding and CAT, that she would be entitled to a grant, an absolute grant. And that's what this evidence is establishing here. And I think that takes us back to the fact that the Board of Immigration failed to provide a meaningful evaluation of the evidence. Because if they had looked at the evidence to see that she is subject to the past persecution and then looked at that evidence – If we didn't remand the case, does the – does it matter whether we regard your second motion as a proper motion to reconsider or can we just ignore that second motion? Well, Your Honor, I think that – Looking back at it just now, it seems to me that your opponent may have a point. It doesn't seem to be couched in terms of a motion to reconsider. It doesn't point to – at least it doesn't point to the procedural problem with the earlier decision. Well, I think in light of the fact, Your Honor, now that we have another motion to remand pending before the Court that has been asserted on behalf of the Board of Immigration Appeals, it is relevant because this speaks to the fact that we notified the Board that they had made a mistake. That they what? That they had made an error. Well, you didn't actually. I mean, that's what I – what I say is reading that motion, you actually didn't say anything in that motion about the fact that the original opinion was somewhat incoherent. Well, on the other hand, Your Honor, they certainly were notified that there was a scribbler's error and that she had been subjected to past persecution. That's your error, but it's not their error. But she had been subjected to past persecution. And the purpose of the motion was to show that there was something that may have been overlooked in the initial decision in January. So I do think that – In other words, what they overlooked was the evidence that was attached. Well, that makes some sense. Exactly. The other thing, though, in terms of the prejudice to the respondent, I would add, is that there is delay. That if we are to grant this motion, what I would really call a motion for extension of time rather than a motion to remand, we would again be back in this ping-pong effect of going back and forth between the BIA and the Ninth Circuit Court of Appeals. This clearly is not in the interest of judicial economy. At least the respondent, the petitioner, has been mindful of judicial economy by, first of all, trying to exhaust all administrative remedies to allow the Board of Immigration to address the issue, either the scribbler's error or the Board's error. The respondent made considerable efforts to have this done by the first motion, by the second motion, by the letter, and then finally by the brief and petitioning to this Court, and then consolidating both cases so that the Court could hear it all at the same time. So what we would have is more delay for the respondent in trying to determine, to have her case heard. So you are opposing or not opposing the motion? The motion to remand? Well, Your Honor, first of all, a motion to remand. Are you opposing it or are you not? Well, I'd like to at least refer to the law, the standard that's been set by this Court for a motion to remand, and that is whether or not the motion to remand will affect the outcome of the proceeding. Well, our motion to remand we believe will. The pending Board motion to remand, the Board has expressly reserved the right to simply reissue the decision. And that's why I'm calling it a motion for extension of time, because they're not stating that they're going to give it a full and substantive review. So the answer is yes, you are opposing it? Yes, Your Honor, to the extent that it's used. Let me ask you this. Suppose we were to remand, grant the motion of the Board to remand, and so it could fix up its first decision. And then it would say that I suppose there was no evidence or search or there was no claim made in the first proceeding, the first hearing, in the only hearing, that your client has suffered the FMG procedure, and that, therefore, there had not been a showing of past persecution or whatever. I don't know. They would go back and review that. And what you're really arguing is that you're entitled to another hearing because there was ineffective assistance of counsel at the first hearing. Is that right? That is the subject of the initial motion. And if they can't fix up their decision as to the first hearing, then you're going to come back here again saying, well, we want to reopen that, even though it's now been fixed up, because it still denies us relief, and the reason we didn't put in this essential evidence was due to ineffective assistance of counsel. This is correct. And that's why you're contending this is simply a motion for a continuum. Exactly. That's exactly our position. That sums it up exactly, our position on this, Your Honor. Well, other than delay, I guess, well, I'm okay. Thank you. Thank you, Your Honor. Counsel, do you have anything? Just one thing, Your Honor. I would note that the arguments the Petitioner is making today with respect to the prejudice that she believes her clients suffered, these arguments have never at any time been presented to the Board in two motions to reopen. Our position is that they are a failure to exhaust and are not appropriate. What we are saying clearly is that the Board should have the chance. The prejudice that she suffered was that she had a – she's asserting that she had a cognizable claim for asylum based on past persecution because of this procedure and it wasn't presented to the Board, and it was – and it has some merit. That's her argument, right? Or possibly has some merit. She argued – she argued just now, Your Honor, that this constituted a matter of Chen-type past persecution, and my position is, our position is that, well, she never raised that before. She merely said this happened, I should have reopening, and I don't think that would be sufficient. But again – Well, why not? I mean, why – You have to explain. If you say to the Board, I was tortured, my legs were cut off, it's not enough to say that that's past persecution. I want asylum because my legs were cut off. She didn't say? No, as the Court pointed out, she didn't make any allegations to how that would change the outcome of the proceeding if it had happened. That's all I'm saying. I don't understand that. She says I have been persecuted. Judge Berzon noted that this is a legal – this is a legal question that she never briefed to the Board and didn't – Which would be dealt with on reopening. Which would – If you reopened it, then you deal with the problem. I think she has to pass a threshold in order to get reopening is what I'm saying, Your Honor. She has to make a legal argument that – She has to make an argument – It would be perfectly obvious to the Board because they know about the statute, which is that ordinarily if you have past persecution and ordinarily if there's no changed circumstances, you do get eligibility for asylum, although this may be – there may be a legal issue as to whether that applies here. Well, I think that she would have to make a claim for it. That's all I'm saying. All I'm saying is it was a perfunctory motion. And again, I'm not arguing the merits. I just thought I'd bring this to the Board's attention. I have another question about whether the second – the only reason the second petition – the second motion could matter, as I understand it, is, A, because the Lozado compliance declaration was attached to that and not to the original one. The only reason it could – it could – Matter, ultimately. Well, no, I think that she presented that before the Board decided the first motion. Decided the Lozado – She presented the same declaration. What the Board said in the first one is that – so that declaration was attached to both of them? It's not attached. It was submitted after the motion was presented, which, by the way, would have been a good time for her to clear up what she calls a Scrivener's error. But she did not. It's in – it is in the record at page 69, Your Honor. And the declaration is there. And so the same evidence is presented. I see. So I don't think that it would have an effect with respect to the evidence before the Board. Thank you. So if there's any questions. Thank you. All right. The case case argument will be submitted. The next case is the one that I'm going to present. This is Valdivia Padilla. Do I start? May it please the Court.
judges: Reinhardt, Thompson, Berzon